May it please the court, Frank McCabe for Appellant Shields. This court has ruled in a number of cases that mental impairment, which prevents a petitioner from filing a habeas corpus petition within the EDPA time limits, may be considered extraordinary circumstances that would resolve inequitable tolling. The question here, I think, is whether Appellant Shields has adequately established mental illness or mental impairment. And... Does he even argue mental illness or mental impairment as a basis for equitable tolling to the district court? I suggest he has. Where? I concede that he has not articulately presented this. I don't care about articulate where. I don't see it. I see suggestions that he was deprived of his papers for some period of time because he was hospitalized with a mental condition, a suicide watch, whatever. I see nothing in the papers to the district court suggesting a claim that he was incapable because of his mental condition. And, in fact, he did file papers with the state court. And there's not an argument that those papers were incompetent or gibberish or anything. So I don't know why the district court is supposed to have inferred there was a claim of mental incapacity based on the papers that were filed. Where was that claim presented to the district court? Well, you suggest that the paperwork that he filed to the state court, it was we can only presume that the state court understood what he was saying. He got somewhere in the... You have no argument to the contrary even on appeal. I mean, you haven't given us the state court papers and said, look, on their face, these papers are the ravings of an incompetent person. They're not the ravings of an incompetent person. We don't know how much he relied upon the assistance of other inmates or help. What I'm suggesting is that there is enough in the record that the Federal District Court had to require the court to make a further inquiry without relatively summarily dismissing his petition. I would suggest that this case is contrasted to Bills v. Clark, where the district court appointed counsel for the petitioner and held an evidentiary hearing. And repeatedly, the appellant in the district court asked for appointed counsel, and he asked for an evidentiary hearing. And in those pleadings... Did he ever raise the question of his mental incompetence? Well, he did. I would suggest that he said when he filed his petition, he requested counsel in a document accompanying that petition, Volume 2 of the excerpts of record at page 208. He wrote, His disability makes it hard for me to read, write, and or understand material regarding my case. He said in that document, The disability was low cognitive function, attention disorder, and mild retardation. And he said that he had been committed, while he was in prison, to a mental outpatient housing unit for psychological treatment and suicide prevention. Now, he doesn't then go the extra step of saying, This prevented me from filing the petition on time. Indeed, he said he was committed to that facility for a finite 54 days, or I've forgotten the period. But there was a finite period of time. He was seeking equitable tolling for this finite period of time based on deprivation of legal papers. Well, that's true. But I'm suggesting that this man, without the assistance of counsel, even though he had repeatedly requested counsel, and without an evidentiary hearing, he raised these arguments as best he could. I think the Ninth Circuit and the United States Supreme Court have said that the pleadings of someone who is appearing in pro para should not be treated the same as the pleadings  And I would suggest You're really not seeking equitable tolling today. You're suggesting, you're focusing much more on the argument that, well, there's signs here that he has mental difficulties, and so there should have been an evidentiary hearing and at least consideration of the appointment of counsel, separate and apart from the statute of limitations issues, which have been the focus of the proceedings before the district court. What I'm not asking this Court today to find that he is entitled to file his petition because they inaward him equitable tolling. What I'm asking this Court to do, as the Court has done in bank, for example, in Whalum v. Early and in Bills v. Clark, Whalum Hunt v. Early, Bills v. Clark, is to remand back to the district court for a more complete, for the appointment of counsel and for an evidentiary hearing. In Bills v. Clark, the court performed an evidentiary hearing where not only the petitioner testified, but also there was a mental health practitioner who testified. If Mr. Shields had been in this mental health unit, if he had been diagnosed with these mental disabilities that he said he has, clearly there are medical records that the district court never saw, and clearly there are mental health practitioners, psychologists or psychiatrists whom he treated with, and these people could be called to testify at an evidentiary hearing. It may well be that after the evidentiary hearing, as the district court found in Bills v. Clark, this was not sufficient to allow equitable tolling. But all I'm suggesting is that he have the shot that Bills had to have his chance of developing the record. The record really was never developed. There are a lot of things that this Court just doesn't have. And I'm suggesting the record is too thin for this Court to merely affirm. And I'm asking that you give this man an opportunity to present a record with his attorney to see whether the district court will allow equitable tolling, to see just how severe this man's mental impairment, mental situation was. The mental situation is not something that's brought up at the 11th hour. If you go back as early as the probation report after the verdict of the jury, but before he was sentenced, it talks about his history of severely emotional, disturbed situation. One of the arguments that he made in his first habeas corpus petition to the state court was that his attorney at the juvenile court, because he was 17 years old when this crime was committed, and he first appeared in juvenile court, and that his claim was his attorney did not present his extensive history of mental illness, diagnosed mental impairment and severe, extremely severe mental, emotional, social, and physical abuse to the court, which he argued would have made a difference as to whether he would be referred to the superior court to be tried as an adult. Mr. McCabe, if you follow Judge Fogel's reasoning in his order, first of all, I tend to agree with Judge Clifton that if the issue is raised at all, this matter of tolling for mental impairment is hardly raised at all, but to the extent it's raised, I think the district court continues. If you look at the last page of the order, Judge Fogel says, even if we fully credit each of the periods for which the petitioner claims equitable tolling, he still falls short. Now, what's your answer to that? Well, my answer is that he wasn't given any credit, I don't believe, for the filing the state court petition a day late. So he didn't get any credit for the time that the state – see, he went to three state courts with his habeas corpus, the superior court, court of appeal, and the California supreme court. Well, the – wait a minute. Now, the Federal habeas court doesn't give credit, you know, to whether or not a state petition is timely, does it? Well, he'd get – if he filed that on time or if he had equitable tolling, I think this is exactly – So whether he filed that on time is not a matter of State law? He was – well, I think if we look at laws versus Lamarck, I think it's a – it can be considered by the Federal court. He allegedly was a day late – You can consider whether he filed it late, but I don't think the Federal court can toll the State statute, can it, and say, well, you know, he's late in the State law, but I'm going to toll the State statute to make the State filing timely? Well, I think it could be considered – Is that what you're suggesting? What I'm saying is the State courts did not deny his petitions as untimely. I think that this Court – I'm looking at what happened in laws versus Lamarck, and I think that the Federal court, if you look at what happened in that Ninth Circuit decision, can say that it was filed timely because his – he was in the mental institution in the prison for a period of time before he filed the State petitions. I see my time is up. Well, I see I've got 16 seconds left. I'd like to use that. Actually, no, you're in deficit, but we kept you occupied, so we'll still give you a minute for rebuttal. Thank you. May it please the Court, Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, it's our position that the particular mental impairment tolling claim is waived because it was not presented to the district court. Well, it was not, I'll say, artfully presented, but he does mention in his papers in the district court mental impairment, right? He was clearly raising that in the context of saying that he should get equitable tolling for the lack of access to his papers. At least in part, but, you know, the problem is, you know, to get to where you want to go, you have to sort of treat this pro se mentally impaired petitioner by the same standard you'd treat a lawyer, right? In other words, the question is, I think, that Mr. McCabe raises is how articulately does he have to raise this issue in order for him to, you know, not be thought of as having waived that claim? Well, I agree that there is some leeway in construing a pro se petition, and in fact, Judge Fogle recognized that and cited that in his district court order. But the petitioner at least has to make the arguments, and then we respond to the petitioner with the particular arguments that they make. And in this case, he was clearly saying I was denied access to my papers for these particular short, discrete periods of time, one of which happened to be while he was in this mental outpatient unit. He was not saying I should get equitable tolling for some mental problem. That's how we responded to it. That's how the district court addressed the issue. But didn't he also ask for equitable tolling for one period of time when he was denied access to the law library? Yes. And help from the lay library clerk whose help Mr. Shields says he needed due to his mental and learning impairment and disability and mental health status? Yes. But that was he was clearly presenting that claim as he wasn't able to get to the library during the 20 days when it was under construction. Pardon me. No, but he also says in that same portion that Judge McGeer refers to that he needs the assistance of law library clerks due to his mental impairment. But that was in the context of saying he needed to get to the library and for 20 days it was under construction. One way to read it, if you read it narrowly, but if you read it liberally, he's saying I can't do this by myself because I'm not capable. I've got to have somebody to help me. And isn't that a mental impairment tolling argument? I think a fair reading of what he was articulating was that he was denied access to his papers and to the library. And that's how all the parties involved construed it. Now, didn't he also, I'm sorry, didn't he also note that he was diagnosed as mentally retarded and was in the CDCR mental health program? He said something about that. But he was never. Didn't he say that specifically? He did. But he never said. I mean, since he's pro se, are we not to liberally construe his pleadings? To some extent. For example, if he had simply said I didn't have access to the library for these days and my papers were taken while I was in ad sec and didn't say and therefore I am entitled to equitable tolling, that would be a fair liberal construction. Someone who's mentally retarded needed to fill in those particular blanks is what you're saying. He needed to at least say this is what I'm claiming. That's what the petitioner did in Laws v. Lamarck. He said I am entitled to equitable tolling because I had a psychotic break. And that was what was sufficient to trigger an evidentiary hearing. Here, the petitioner never said I'm entitled to equitable tolling because of my mental problems. It was because of his alleged lack of access to his papers and to the library. In Plyler v. Ford, the Supreme Court said district judges have no obligation to act as counsel or paralegal to pro se litigants. So there is some leeway. But, again, I don't think the district court had an obligation to reach out and comb through the petitioner's pleadings and say because he mentions a mental problem in other contexts, I have to construe that as an equitable tolling claim based on mental impairment and then change the entire tenor of what the motion practice was and reach out to make that one of the claims when nobody was seeing that that was one of the claims before. I would also note that the pleadings themselves were of a very high quality for a pro se petitioner. He also represented himself as an equitable tolling. Sotomayor, that would have been a poor quality? It would have been better for him? Well, as far as whether the district court was required to reach out and construe this as some separate claim, the district court was reading the pleadings, too, and could see that they were of a very high quality. They cited the appropriate cases. They made an articulate complaint about what he was trying to get across. And it wasn't that he was mentally incapacitated. And also in the papers were some indications he represented himself at trial, at this special circumstances murder trial. And at the end of the trial, the trial judge said, I've had an opportunity to observe you more than I would for most cases since you represented yourself, and I see that you were far above the minimal intellectual capacity. But the timing on that is different. I mean, how he was during trial versus how he might have been when he was filing these papers, I don't think you can equate that, can you? I mean, he could have been. Well, I'm just saying all of that was before the district court. And so there was no reason, based on what was before the district court and the specific arguments that the petitioner was making, there was no reason for the district court to say, I believe that even though you haven't made this claim, I have to have an evidentiary hearing on whether you were so mentally incapacitated that you couldn't file a timely petition. In Bills v. Clark, this Court said that in order to trigger that kind of an inquiry, the petitioner has to show that he had a mental impairment that was so severe that he was unable rationally or factually to personally understand the need to timely file. And here, in the papers before the district court, there was actually an indication that the defendant knew the exact Federal deadline because he had sought preferred legal user status from the library. This is at ER 43 and 27. And he said on that form, my deadline for my Federal petition under ADPA is February 21, 2007. So he was totally on the ball as far as that goes. I don't see how he could show, therefore, that any mental problems he might have had were so severe that he was unable to understand the need to timely file. And that was before the district court, too. So when you look at all of his pleadings and what he was actually presenting, I think it would be unfair to tell the district court that it was an abuse of discretion to address the claims it had in front of it and not to reach out and find this other claim based on cobbling together some mentions here and there of his mental incapacity. The Petitioner had some obligation to at least say, this is what I'm raising. And they've been able to do that in a number of cases. In all of the cases, Laws v. Lamarck, Roberts v. Marshall, all of the cases that addressed this, it was a pro se Petitioner who said, this is my claim. So at the very least, you have to say that before the district court has an obligation to address that and to hold an evidentiary hearing. I think that was not fairly presented to the district court in this case. Well, Petitioner should say that if the Petitioner has the mental capacity and ability to do so. Problem is, you know, at the start, we don't know, you know, what the mental status of that Petitioner is. I mean, it could be totally unable even to say that much. In other words, you know, you're approaching this whole thing from the viewpoint that, well, every Petitioner is a rational person and should be held to a certain standard, even if they're pro se. Well, that certainly is true, not true with some people with, you know, I don't know what, but, you know, with, I'll call it a major mental disease. Right? What I'm saying is. So wait a minute now. So my question is for those people. Now, you say, well, he had to make sure the respondent has a medical record, right? You could look at that and make some determination. Well, you know, should we hold, should he be held to that standard? You didn't do that, did you? No, but what I'm saying. Look at his medical record to see what his mental, let's say, diagnosis is? We would not do that unless he raised that as a claim. And when we read his opposition. Well, that assumes he has the capacity to do that. Well, I don't believe that it's incumbent on either the attorney general or on the district court to get mental health records and fully explore this issue any time a petitioner mentions the words mental impairment. So it's the obligation of a mentally disabled petitioner to raise his own disability, at least to the level where, you know, it raises a yellow warning flag for the respondent. Exactly. And they have been able to do that in all of these cases that I was mentioning. Well, some have, but we don't know how many have not. Well, the alternative is. You know, there are a lot of, you know, mental retardees in the state prison system, right? There certainly may be, Your Honor, but the alternative is to place the burden on the respondent or the district court to make the argument for the defendant. And just in case there might be some problem for us to raise that as a claim or for the district court to say I think that's a claim just because there might be some indication of mental impairment and then the burden would be shifted. But here the indication is a little bit, it seems a little more compelling. I mean, I don't think anybody expects that we have to screen every individual for mental health reasons, but there are some indicators here that seem to be a little more compelling. Some may argue more compelling. Well, there are also indicators on the other side, though, as I mentioned before, like the fact that he represented himself at trial and the fact that all of his pleadings were quite articulate. Which brings us to how do we, how are we supposed to look at this narrowly or liberally? And I think the law, I think, indicates we're supposed to, per pro se, liberally construe his claim. Again, I would refer to the U.S. Supreme Court's case in Plyler v. Ford which said district courts have no obligation to act as counsel or paralegal to pro se litigants. And I think that in this case requiring a district court to reach out and create a claim of equitable tolling where the Petitioner did not make it would fall into that category of acting as the Petitioner's paralegal. Thank you. Roberts. Mr. McCain. Do you do? Mr. Shields told the district court in a pleading, in his request for appointment of counsel, which accompanied his petition for writ of habeas corpus, he said, my disability makes it hard for me to read, write, and or understand material regarding my case. And this is at Volume 2 of the Excerpts of Record at page 208. He said what his disability was. He said it was low cognitive function, attention disorder, and mild retardation. And I would suggest that, coupled with the other things that were in his pleadings, raises a yellow flag to the Court to at least appoint counsel for the man to who would have any authority that supports that proposition. Well, I think it's within the discretion. I think you're setting up not only a very low bar for appointment of counsel on habeas, but a pretty high bar for the district court to get over in terms of what it's supposed to infer. So what's your best authority to support that proposition? Well, I have no authority that says that a district court must appoint counsel on habeas. So you want us to create that authority. Why not? How about authority from other circuits? I'm just, I haven't looked at the cases from other circuits. What strikes me is that that would make us a sitting duck for the Supreme Court.  No, it doesn't at all. I think that the case, this case is unique on its facts. It's a very unusual case. Well, what is unique about the fact of a prisoner having reading difficulties or learning disabilities? It's a sad story, but the prison is filled with people that get that characteristic. And to tell the district court that you're supposed to infer from an allegation that I have trouble reading that counsel must be appointed and you have to inquire into mental disability when the petitioner himself is making no such claim, strikes me as a pretty difficult burden to put on the district court. I'm not saying that this Court should say, should have a blanket rule in all cases like this. I'm saying that this is a very unique case. What makes it unique? It is a unique case in that he has raised his, these, he's, first of all, he's asking for equitable tolling, which is. That's actually not the issue that's been argued at all. It's a certified issue, but that's not what we've talked about the last 15 or 20 minutes. No, but what we're seeing is that we need to determine whether he's entitled to equitable tolling. He has said more or less inferentially that I've got problems, mental problems. I was in this mental hospital unit for a period of time. During that time, I couldn't get access to my files and records. So he's raised that. Inarticulately, I can see. Well, he's raised very articulately the claim that he didn't have access to his papers. I mean, I've read his papers. They don't look like other, I mean, they're not deficient as compared to other pro se filing papers. Well, he also did not have, all of this had happened. His filing of the petition and these proceedings in the district court predated both Bills v. Clark, the decision in this court, and Holland v. Florida, the decision in the United States Supreme Court. Well, but our court has recognized equitable tolling for a long time. Oh, yes, it has. But what I'm saying is in Bills v. Clark, the district judge granted appointment of counsel and held an evidentiary hearing at which the attorney called Mr. Bills and called the mental health professional who treated him. And that is what I'm asking here, to put him in the same situation as Mr. Bills. And we would ask the court. We're not asking the court to grant equitable tolling. We're not asking the court, obviously, to grant his petition. We're just asking that he get himself back into the ballgame by remanding it under the unique unusual situation in this case, give him an attorney, and if the attorney believes an evidentiary hearing is warranted, then it would be handled in the district court for further development of the record. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Tashima, Clifton, Murguia